JAMES M. BURRELL and C. MARIE BURRELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burrell v. Commissioner
Docket No. 33684-85.
United States Tax Court
T.C. Memo 1987-373; 1987 Tax Ct. Memo LEXIS 373; 53 T.C.M. (CCH) 1470; T.C.M. (RIA) 87373; July 28, 1987. *373 Vernon L. Jarboe, for the petitioners. Charles M. Berlau, James E. Cannon, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in an additions to petitioners' Federal income tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a) [1]
6653(a)(1)
6653(a)(2)
1979
$ 4,547.15
$ 227.36
--
--
1980
6,152.50
307.63
--
--
1981
24,188.00
--
$ 1,209.40
*
After concessions, the issues are: (1) whether petitioners' 1979 interest income and petitioners' 1979, 1980, and 1981 capital gain income should be increased to reflect the entire amounts of interest and capital gain from the sale of stock; (2) whether petitioners' 1979 income should be increased to reflect the entire amount of paper route income; and (3) whether respondent's *374 determination of additions to tax pursuant to section 6653(a), for 1979 and 1980, and pursuant to sections 6653(a)(1) and (2), for 1981, should be sustained. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioner, husband and wife, resided in Topeka, Kansas at the time the petition herein was filed. Petitioner James M. Burrell (hereinafter "petitioner") was employed for 25 years as a revenue agent for the Internal Revenue Service prior to this retirement in 1974. He has a college degree in Business Administration and attended law school for one and a half years. Beginning in 1961, petitioner invested between $ 25 and $ 50 per month in what became known as the Oasis Investment Corporation (hereinafter "Oasis"). Petitioner ultimately owned 10 shares of Oasis and petitioner's total investment therefor was $ 6,000. In 1978, petitioner and 13 other shareholders of Oasis formed Oasis Equities (hereinafter "Equities"), a general partnership, for the purpose of selling their stock in Oasis. Equities' partnership agreement acknowleges a contribution *375 to capital by petitioner of 10 shares of Oasis stock and lists petitioner as a partner of Equities. Equities' partnership agreement makes no reference to any of petitioner's children. An application to sell the Oasis stock, filed with the California State Department of Corporations, was filed in petitioner's name, with no reference to his children. Equities sold the Oasis stock on the installment basis for $ 2,485,000. Of this amount, petitioner received principal and interest payments as follows: PRINCIPAL
INTEREST
YEAR
PAYMENTS
PAYMENTS
1979
$ 31,140
$ 1,712
1980
25,000
5,641
1981
164,054
1,026
TOTAL
$ 220,194
$ 8,379
The 1979 and 1980 principal payments were invested in petitioners' names for periods of approximately one year. At the conclusion of the one-year periods of investment, petitioners transferred to each of their five children one-sixth of the principal payments. The remaining one-sixths of the 1979 and 1980 principal payments were thereafter invested in petitioners' names or used for their own purposes. The 1981 principal payment was treated slightly differently. After investment of only two months, $ 48,329 of the *376 1981 principal payment was used to pay off a mortgage on real property owned by petitioners. Approximately eight months later petitioners transferred to each of their three sons one-sixth of the 1981 principal payment, unreduced for that portion used to pay off the mortgage. After the tax audit of petitioners was begun, petitioners executed two promissory notes, one to each of their two daughters, each note being in the amount of one-sixth of the 1981 principal payment. [2]
J.D.S.L. & J. Burrell, a purported partnership, [3] reported as long-term capital gains the 1979 principal payment less a claimed basis of $ 180, the 1980 principal payment less a claimed basis of $ 770, and the 1981 principal payment less a claimed basis of $ 5,050. Petitioner, who is listed as a one-sixth partner of J.D.S.L. & J. Burrell, was allocated one-sixth of *377 such long term capital gains. Petitioners reported petitioner's allocable share of the long-term capital gains on their 1979, 1980, and 1981 returns. Petitioners reported the 1980 and 1981 installment sale interest income. J.D.S.L. & J. Burrell reported the 1979 installment sale interest income. Petitioner, who, as stated above, is listed as a one-sixth partner of J.D.S.L. & J. Burrell, was allocated one-sixth of the 1979 installment sale interest income. Petitioners reported petitioner's allocable share of the 1979 installment sale interest income on their 1979 return. The income earned on the investment of the principal payments during the one-year periods commencing upon the receipt of each principal payment was reported by petitioners on their returns for the years in which such income was earned. From January of 1979 to June of 1980, petitioner operated a paper route for the Topeka Daily Capital and Sunday Capital-Journal. Petitioners reported the 1980 paper route income. J.D.S.L. & J. Burrell reported the 1979 paper route income, which income was specially allocated *378 to petitioners' two daughters. During 1979, petitioner delivered the newspapers by himself at least five days a week. His two daughters alternated in helping him deliver papers on Sunday mornings. Occasionally, one of his two daughters would help petitioner deliver papers on Wednesday mornings. The testimony of petitioner and his two daughters was that the daughters handled all aspects of the paper route other than delivery. However, the daughters did not participate in obtaining the paper route delivery contract and the contract makes no reference to the daughters. The collections for the paper route were mostly made by mail. The collections not made by mail were made by petitioner alone or by petitioner driving his two daughters to various locations to make the collections. No books or records were kept with respect to the paper route. While working as an agent for the Internal Revenue Service from 1949 to 1974, petitioner delivered newspapers to supplement his income. During 1980, which is after petitioner retired from the Internal Revenue Service, petitioner delivered papers to augment his income. Respondent determined in the notice of deficiency sent to petitioners (1) *379 that the 1979, 1980, and 1981, long-term capital gains attributable to the sale of the Oasis stock reported by J.D.S.L. & J. Burrell should have been reported by petitioners, (2) that the 1979 installment interest income reported by J.D.S.L. & J. Burrell should have been reported by petitioners, (3) that the 1979 paper route income reported by J.D.S.L. & J. Burrell should have been reported by petitioners, and (4) that petitioners are subject to additions to tax pursuant to section 6653(a) for 1979 and 1980, and pursuant to section 6653(a)(1) and (2) for 1981. OPINION The first issue is whether petitioners must report the 1979, 1980, and 1981 long-term capital gains and the 1979 installment sale interest income attributable to the sale of the Oasis stock. Petitioners contend that a partnership which existed among petitioner and his five children owned and sold the Oasis stock. [4] Respondent contends that petitioner alone owned the 10 shares of Oasis stock. *380 A fundamental principal of taxation is that "[a] sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title." . Intra-family transactions will be closely scrutinized. . Absent a transfer to a family member of "all command over and enjoyment of the economic benefit" of property, the transferee member will not be recognized as the true owner of such property for Federal income tax purposes. . Command may be exercised "through specific retention of legal title." . The burden of proof is on petitioners. Rule 142(a). . The initial investments made to acquire the Oasis stock were made by petitioner. The application to the California State Department of Corporations to transfer securities lists petitioner alone as the owner of the 10 shares of Oasis stock. Equities' partnership *381 agreement indicates that petitioner was a partner and that petitioner contributed the 10 shares of Oasis stock to Equities, with no reference to any of petitioner's children. Petitioner retained legal title to the 10 shares of Oasis stock, either directly or through Equities. At no time did any portion of the legal title transfer to any of petitioner's children. Through this retention of legal title, petitioner continued to exercise command over the 10 shares of Oasis stock. Each of the principal payments was made to petitioner. Petitioner invested each of the principal payments in his and his wife's own names. The one-sixth portions of the principal payments transferred to petitioner's children were not made until approximately one year after receipt. Not all one-sixth portions were transferred. Petitioner used $ 48,329 of the 1981 principal payment, to pay off a mortgage on his personal residence. No documentary evidence was introduced which in any way tended to indicate that petitioner was not the sole owner of the 10 shares of Oasis stock at the time of its sale. The testimonial evidence was self-serving and unconvincing. *382 See (testimony of an interested party is not necessarily conclusive). We hold the petitioners have failed to prove that the petitioner was not the sole owner of the Oasis stock at the time of its sale. Respondent's determination that the entire 1979, 1980, and 1981 long-term capital gains and the entire 1979 installment interest income are taxable to petitioners is sustained. The next issue is whether petitioners are taxable on the 1979 paper route income. Petitioners contend that the paper route income was earned by petitioners' two daughters, with petitioner just assisting his two daughters without compensation. Respondent contends that petitioner earned the 1979 paper route income. The burden of proof is on petitioner. Rule 142(a); Petitioner delivered the newspapers by himself five to six times a week. He received assistance in delivering the newspapers from one of his two daughters on Sundays and occasionally on Wednesdays. Petitioner testified that his daughters handled all other aspects of the paper route. The daughters, however, did not participate *383 in obtaining the paper route delivery contract and the contract makes no reference to the daughters. Further, those collections which were not mailed in were made by petitioner alone or by petitioner driving his daughters to various locations to make the collections. Finally, no books or records were kept with respect to the paper route. At any rate, even if it were conclusively established that the daughters did handle all aspects of the paper route other than delivery, we nonetheless feel that delivery is the major income producing activity with respect to a paper route, especially where, as here, most of the collection is done by mail. Petitioner's delivery of the newspapers in 1979 was not petitioner's first association with a paper route. Throughout his adult life petitioner has delivered newspapers as a source of supplemental income. We hold that petitioner has failed to prove that the 1979 paper route income is not taxable to him. The final issue is whether petitioners are liable for the additions to tax pursuant to section 6653(a) for 1979 and 1980 and sections 6653(a)(1) and (2) for 1981. The burden of proof is on petitioners. Rule 142(a); *384 Petitioner obtained a college degree in Business Administration, attended law school for a year and a half, and worked as an agent for the Internal Revenue Service for 25 years prior to this retirement in 1974. We hold, on the basis of the facts presented and in consideration of petitioner's education and work experience, that petitioner's unsuccessful attempt to shift the burden of taxation -- with respect to the 1979, 1980, and 1981 long-term capital gains from the sale of the Oasis stock, the 1979 installment interest income from the sale of the Oasis stock, and the 1979 paper route income - was done with intentional disregard or disregard of the rules and regulations. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50% of the interest due on the underpayment caused by negligence. ↩
2. As of April 11, 1984, well after the audit of petitioners' returns was begun, petitioners had two certificates of deposit each in the amount of one-sixth of the 1981 principal payment, one payable to themselves or upon their deaths to one of their daughters and the other payable to themselves or upon their deaths to their other daughter. ↩
3. The names of petitioners' five children are Jay, Dean, Steven, Linda, and J↩anet. 4. Petitioners actually contend that the partnership which owned and sold the Oasis stock had two partners, petitioner and a partnership among petitioner's five children. Whether the purported partnership had two members -- petitioner and a partnership among his five children -- or six members -- petitioner and his five children -- is irrelevant to the determination of the issues presented. ↩